[Cite as *State v. Cannon*, 2011-Ohio-2394.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95426**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MAURICE CANNON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-523272

**BEFORE:** Cooney, J., and Celebrezze, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 19, 2011

**ATTORNEY FOR APPELLANT**

Scott D. Claussen
Law Office of Scott Claussen
8813 Memphis Villas Blvd.
Brooklyn, Ohio 44144


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Ma'rion D. Horhn
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


COLLEEN CONWAY COONEY, J.:

{¶ 1} Defendant-appellant, Maurice Cannon ("Cannon"), appeals his convictions for felonious assault, kidnapping, burglary, menacing by stalking, and impersonating an officer. We find no merit to the appeal and affirm.

{¶ 2} In April 2010, Cannon was charged with domestic violence, kidnapping, aggravated robbery, menacing by stalking, impersonation of officers, two counts of felonious

assault, and two counts of burglary. The State dismissed the domestic violence charge, and the remaining charges proceeded to a jury trial where the following evidence was presented.

{¶ 3} The victim, Cinnamon Carswell ("Carswell"), testified that on February 24, 2009, she and Cannon met for a drink. The pair first met two years earlier and eventually began dating. Carswell wanted to meet with Cannon to end their relationship. The two shared a drink at a local establishment, but Cannon did not agree to end their relationship. Carswell asked him to drive her home. Cannon agreed but became angry and began to drive erratically.

{¶ 4} Realizing that the situation was deteriorating, Carswell exited the vehicle to walk home. While she was walking, Cannon drove the vehicle into her, thus injuring her and damaging the hood of the car. Cannon then threw her into the car and punched her face and arms until she lost consciousness. Cannon then drove her to the home of his cousin, Lynette Evans ("Evans").

{¶ 5} Carswell testified that after spending the night at Evans's home, Cannon drove her to the Knights Inn hotel in order to get "cleaned up." It was at this time that Cannon left her alone in the hotel room, and she managed to escape and flag down a police car. Sgt. Karl Koch ("Koch") testified that Carswell's eye was swollen shut and her face was very bruised. He called for an ambulance and took photos of her injuries. Carswell was hospitalized for

three days with injuries to her knee, legs, and face, and she had a raspy, sore throat consistent with strangulation injuries.

**{¶ 6}** The State called Evans who testified that when Cannon arrived at her home with Carswell, he was in a "panicked state." Carswell was crying and asking for medical assistance. Cannon claimed that she had been robbed and that he could not take her to the hospital because he would be accused of causing her injuries. Carswell could barely stand and her face was visibly injured. Cannon kept Carswell at Evans's home overnight but refused Evans any access to Carswell.

**{¶ 7}** Both Carswell and her mother, Janice Johnson ("Johnson"), testified that in the weeks after the incident Cannon repeatedly came to Johnson's home where Carswell was staying. Cannon would bang on the door and knock on the windows. He also called the home numerous times. Johnson feared for her safety and that of her daughter. Carswell and Johnson called 911 in response to his unwelcome visits and phone calls. A record of these calls was admitted into evidence. In addition, Cannon made incessant phone calls to Carswell's ex-husband, William Carswell. In one phone conversation, Cannon posed as a Cleveland police detective. Carswell eventually left Ohio with her children to protect them from Cannon.

**{¶ 8}** It was also known that Cannon continued to enter Carswell's home without permission. Although he had slept in her home prior to the incident, Cannon did not have a

key to the home nor permission from Carswell to come and go as he pleased. In an attempt to apprehend Cannon, police often visited Carswell's home. Detectives Gerald Sowul and John Kraynik testified to securing the home by closing the windows and locking the doors on the night prior to Cannon's arrest. The following day, the detectives apprehended Cannon inside Carswell's home, and both detectives testified about discovering an open first floor window through which Cannon had entered the home.

{¶ 9} At the close of the State's case, the court granted the defense motion for acquittal pursuant to Crim.R. 29 for the aggravated robbery charge and one count of burglary. Finally, Cannon testified in his own defense. He stipulated to three prior convictions for domestic violence, one for kidnapping, and one for felonious assault. Cannon claimed that on the night of the incident, Carswell had already been injured when he arrived to take her out for a drink. He maintained that she told him she had been robbed and beaten but did not want to talk about it. He claimed that he encouraged her to seek medical treatment but she refused because she did not want anyone to see her. Cannon denied driving Carswell's car, hitting her with it, or punching her in the face. He testified that he had a key to Carswell's home and was welcome to stay there any time. Cannon denied making frequent calls and visits to Johnson's home. He accused those who testified against him of lying.

{¶ 10} The jury found Cannon guilty of all the remaining charges: kidnapping, menacing by stalking, impersonating an officer, burglary, and two counts of felonious assault. He was sentenced to a total of ten years and five months in prison.

{¶ 11} Cannon now appeals, raising two assignments of error.

<u>Sufficiency and Manifest Weight of the Evidence</u>

{¶ 12} In his first assignment of error, Cannon argues that the State failed to present sufficient evidence to sustain his convictions for two counts of felonious assault, burglary, and menacing. He also contends in this same assignment that his convictions are against the manifest weight of the evidence.

{¶ 13} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the State has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 14} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, the Ohio Supreme Court restated the standard of review for a criminal manifest-weight challenge as follows:

{¶ 15} "The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."

{¶ 16} Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶ 17}** Cannon argues that the State failed to prove the element of "serious physical harm" regarding his convictions for felonious assault. Under R.C. 2901.01(A)(5), "serious physical harm" means any of the following:

"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(b) Any physical harm that carries a substantial risk of death;

"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

**{¶ 18}** Carswell testified about the injuries she sustained as a result of two assaults — being struck by the vehicle and being physically abused by Cannon, describing her injuries as severe. Medical records prove that Carswell was hospitalized for three days, having suffered injuries to her face and extremities, experiencing severe pain to her head and neck as well as to

her legs and knees. Photos of her injuries support her testimony and the medical records. Carswell's testimony was also corroborated by the testimony of the nurse who treated her at Hillcrest Hospital. Moreover, Evans observed Carswell's injuries on the night Cannon brought Carswell to Evans's home, and Evans testified that she felt Carswell needed medical attention. Warrensville Heights police officer Karl Koch also testified about Carswell's extensive facial injuries that he observed the following morning. Thus, the two felonious assault convictions are supported by sufficient evidence and not against the manifest weight of the evidence.

{¶ 19} Cannon also argues that the State failed to prove each element of the burglary charge. Burglary, pursuant to R.C. 2911.12, is defined as follows:

"No person, by force, stealth, or deception, shall do any of the following:

"(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶ 20} In support of his argument, Cannon relies on his testimony in which he claimed that he had a key and believed that he was welcome in Carswell's home at any time. Carswell denied both of these claims, and detectives observed an open window to the home on the day of Cannon's arrest. This is an issue of credibility, which is irrelevant to a sufficiency of the evidence analysis. *Thompkins* at 390. Although credibility is relevant to the manifest weight of the evidence claim, Cannon fails to discredit Carswell's testimony. Her

testimony was corroborated by her ex-husband who said that Cannon was not living in Carswell's home and was not in possession of a key to the residence, as well as by police who had locked the doors and closed all the windows. Thus, there is sufficient evidence to support Cannon's conviction for burglary, and we find the conviction is not against the manifest weight of the evidence.

{¶ 21} Finally, Cannon argues that the State failed to prove the elements of menacing by stalking set forth in R.C. 2903.211(A)(1), which states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211 was "not enacted for the purpose of alleviating uncomfortable situations, but to prevent the type of persistent and threatening harassment that leaves victims in constant fear of physical danger." *McKinley v. Kuhn*, Hocking App. No. 10CA5, 2011-Ohio-134, citing *Kramer v. Kramer*, Seneca App. No. 13-02-03, 2002-Ohio-4383, at ¶ 17. R.C. 2903.211(D)(1) defines a pattern of conduct as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."

{¶ 22} The petitioner in a stalking case need not prove that the respondent made an explicit or direct threat of physical harm in order to establish the element of physical harm. *Kramer* at ¶15. Rather, "the test is whether the offender, by engaging in a pattern of

conduct, knowingly caused another to believe the offender would cause physical harm to him or her." Id.

{¶ 23} In the instant case, Johnson was the victim of the menacing by stalking. She testified that in the months after the incident in February 2009, Cannon would call her home incessantly. He would also come to her home, uninvited and unwelcome, and bang on the doors, pull on the windows, and shout for Carswell. Johnson testified she told him to go away because he was not welcome near her home.

{¶ 24} The State submitted tapes of numerous 911 calls in which Johnson called police because of Cannon's behavior. Johnson testified she feared for her safety. Detective Kraynik testified that after one of the incidents of stalking, Johnson was "troubled" and had "[a] lot of anxiety," afraid to even come to the door when the officers arrived at her home. Despite Cannon's assertions to the contrary, these incidents of calling and trespassing are sufficient to establish a pattern of behavior that caused Johnson mental distress as defined in R.C. 2903.211(D)(1). Moreover, the conviction is not against the manifest weight of the evidence.

{¶ 25} Accordingly, the first assignment of error is overruled.

Ineffective Assistance of Counsel

{¶ 26} In his second assignment of error, Cannon contends that he received ineffective assistance of counsel.

{¶ 27} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 28} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; *Strickland* at 686. In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus.

{¶ 29} This court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Strickland* at 689. Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and

appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001-Ohio-26, 744 N.E.2d 163.

{¶ 30} Cannon first argues that his initial attorney was ineffective for failing to take his family's calls and for failing to speak with Cannon prior to trial.   This argument is meritless.  Cannon's initial counsel did speak with him during the course of his representation.   The record shows that Cannon's initial counsel fully participated in pretrials and discovery. Cannon's choice to have new counsel assigned was not supported by evidence of any ineffectiveness.

{¶ 31} Cannon further argues that his second counsel was also ineffective because he failed to timely subpoena security tapes from the Knights Inn hotel.   All tapes at the hotel are destroyed after six months, and the subpoena was received after the subject tapes had been destroyed.   However, the State had already provided Cannon's counsel with still photos from the tapes during discovery.   Moreover, there had not been any dispute between Carswell and Cannon as to whether they had been at the Knights Inn.   Failure to retrieve tapes that were duplicated with still photos, and in no way assisted Cannon's defense, does not fall below an objective standard of reasonableness.

{¶ 32} A third trial counsel was assigned after Cannon's second attorney informed the court that Cannon refused to communicate with him.   When this attorney attempted to

contact his client, Cannon told him that he was wasting his time. The trial court properly assigned a third attorney at Cannon's request.

{¶ 33} Cannon also contends that his third counsel was ineffective for failing to offer evidence, failing to cross-examine the hospital nurse, failing to subpoena Cannon's employer, failing to give a lengthy closing argument, and failing to timely object to statements made by the victim regarding Cannon's stealing from her. These arguments are meritless. After a thorough review of the record, we find that trial counsel did admit evidence and did timely object to statements made by Carswell about Cannon's stealing from her. Moreover, trial counsel's choice not to cross-examine the hospital nurse and not to subpoena Cannon's employer were most likely strategic decisions and fell well within counsel's sound discretion. The length of counsel's closing argument is also a matter of discretion. Moreover, Cannon failed to show how counsel's performance fell below the objective standard of reasonableness or how it prejudiced him in any way. Cannon received a fair trial and justice was done.

{¶ 34} Therefore, we find Cannon's argument lacks merit, and his ineffective assistance of counsel claim must fail.

{¶ 35} Accordingly, the second assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
COLLEEN CONWAY COONEY, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KENNETH A. ROCCO, J., CONCUR