[Cite as *State v. Beckwith*, 2013-Ohio-492.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98497**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# GREGORY E. BECKWITH

DEFENDANT-APPELLANT

## JUDGMENT:
## REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-557736

**BEFORE:** Kilbane, J., Celebrezze, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** February 14, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Oscar E. Albores
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Gregory Beckwith ("Beckwith"), appeals from his menacing by stalking conviction. For the reasons that follow, we reverse and remand.

{¶2} In December 2011, Beckwith was charged with menacing by stalking, with Ashia Benson ("Benson") named as the victim. The charge carried a furthermore specification that Beckwith trespassed on the land or premises where Benson "lives, is employed, or attends school." The matter proceeded to a bench trial, at which the following evidence was adduced.

{¶3} Benson testified that she was hired as a "page" at the Cleveland Public Library in March 2011. Her typical duties included showing and shelving books. Benson further testified that when she first started working at the library she was advised that "people come up there because some of them crazy, some of them creepy, but they not really. It's just how they are. It's not like they going to do anything to you."

{¶4} Benson first met Beckwith in late May or early June 2011. At first, she noticed that Beckwith "was everywhere [she] was." She explained that when she was shelving books on a particular floor she would observe Beckwith. Beckwith would then follow her when she proceeded to a different floor. Benson testified that this pattern became common, about three times a week. Benson realized that these encounters were not coincidences when he started making grunting noises at her every time she walked by him. Benson reported these encounters to her supervisors and other coworkers.

{¶5} Benson testified that she first reported an incident sometime between May and November 2011 where Beckwith asked her to locate a specific book for him. She gave the book to him and watched him walk downstairs, put the book on the table, and walk away. Another time, Beckwith approached Benson while she was shelving books and asked her to help him download a song on his cell phone. On a third occasion, Benson testified that she believed Beckwith was filming her with his cell phone as she walked through the library.

{¶6} As a result of these incidents, Cleveland Public Library Security Guard Christopher Flak ("Flak") advised Beckwith on October 18, 2011, that he was no longer permitted at the library. Flak testified that Beckwith "complied and left." Benson testified that Beckwith did not return to the library after that, but she did have two encounters with him near the Hyatt Hotel at The Arcade directly across the street from the library. During the first encounter, she observed Beckwith outside of the library where the bus drops her off in the morning before work. During the second encounter, on November 16, 2011, Beckwith followed Benson as she was walked into the entrance of The Arcade. Benson noticed Beckwith's reflection behind her in the glass door. She turned around and observed Beckwith with his cell phone pointed toward her buttocks. Benson stated that these incidents made her feel uncomfortable and "creeped out." At work, her heart would beat fast when someone walked past her. Her coworker, Aja Russo, testified that she never observed Beckwith follow Benson. Benson's supervisor testified that she observed Beckwith around Benson on two occasions. On both

occasions, he was in the same area as Benson, but he did not interact with her. Her supervisor further testified that as a result of these incidents, they moved her to shelve in a different area.

**{¶7}** Benson testified that in the 13 months that she has been working at the library she has made complaints about other people. She has encountered numerous people who come into the library and "follow people and make people feel uncomfortable." Benson recalled one incident where she heard a man unzipping his pants a few aisles away from her. Another time, a man with "creepy hair" unzipped his pants while he looked at her through the book stacks.

**{¶8}** At the conclusion of trial, the court found Beckwith guilty. The court then sentenced him to 17 months in prison. The court also ordered that Beckwith pay a $500 fine.

**{¶9}** Beckwith now appeals, raising the following five assignments of error for review, which shall be discussed together where appropriate.

<u>ASSIGNMENT OF ERROR ONE</u>

[Beckwith's] menacing by stalking conviction is not support be legally sufficient evidence as required by state and federal due process.

<u>ASSIGNMENT OF ERROR TWO</u>

The state of Ohio failed to present legally sufficient evidence as required by state and federal due process to support the furthermore specification that he committed the offense of menacing by stalking by trespassing "on the land or premises where the victim lives, is employed, or attends school."

## ASSIGNMENT OF ERROR THREE

[Beckwith's] menacing by stalking conviction and his conviction on the furthermore specification are against the manifest weight of the evidence.

## ASSIGNMENT OF ERROR FOUR

The trial court erred in admitting highly prejudicial other acts evidence.

## ASSIGNMENT OF ERROR FIVE

[Beckwith] was deprived of his property without due process of law, and his rights under the Sixth Amendment where the trial court imposed court costs in a journal entry after not imposing any court costs at the sentencing hearing.

## Sufficiency of the Evidence

**{¶10}** In the first and second assignments of error, Beckwith argues that the State failed to prove that he "caused Benson mental distress, that he caused her to believe he would cause her mental distress, and/or that he acted with the requisite culpable state of knowingly" and he trespassed at the library while committing the offense of menacing by stalking.

**{¶11}** The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing

such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶12}** Beckwith was convicted of menacing by stalking in violation of R.C. 2903.211(A)(1), which provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(D)(2) defines "mental distress" as any of the following:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

**{¶13}** In order to show that Beckwith violated R.C. 2903.211(A)(1), the State must show that Beckwith engaged in conduct he knew would cause Benson to believe that he would cause her physical harm or cause her to suffer mental distress. *See Rufener v. Houston*, 8th Dist. No. 97635, 2012-Ohio-5061, ¶ 15; *State v. Russell*, 8th Dist. No. 95548, 2011-Ohio-2789, ¶ 14.

**{¶14}** In the instant case, Benson testified that she first reported an incident where Beckwith asked her to locate a specific book for him. She gave the book to him and watched him walk downstairs, put the book on the table, and walk away. Another time, Beckwith approached Benson while she was shelving books and asked her to help him

download a song on his cell phone. On a third occasion, Benson testified that she believed Beckwith was filming her with his cell phone as she walked through the library. Benson also had two encounters with Beckwith near the hotel across the street from the library. During the first encounter, she observed Beckwith outside of the library where the bus drops her off in the morning. During the second encounter Benson testified that Beckwith followed her in the hotel entrance when she noticed Beckwith's reflection in the revolving glass door. She turned around and observed Beckwith with his cell phone pointed toward her buttocks. Benson testified that these encounters with made her feel "[u]ncomfortable, kind of creeped out." She described Beckwith as "creepy." She further testified that she was "jumpy when she was working. Like, if somebody would walk past or I hear footprints, I get scared, turn around, my heartbeat [sic] fast."

**{¶15}** While expert testimony is not necessary to establish that a victim experienced mental distress as a result of the offender's behavior, mental distress must be proven by facts introduced at trial and the reasonable inferences springing from those facts. *Cleveland Hts. v. Lewis*, 8th Dist. No. 79511, 2002-Ohio-2736, ¶ 22; *Rufener* at ¶ 17. "R.C. 2903.211 was 'not enacted for the purpose of alleviating uncomfortable situations, but to prevent the type of persistent and threatening harassment that leaves victims in constant fear of physical danger.' *McKinley v. Kuhn*, 4th Dist. No. 10CA5, 2011-Ohio-134, citing *Kramer v. Kramer*, 3d Dist. No. 13-02-03, 2002-Ohio-4383, at ¶ 17." *State v. Cannon*, 8th Dist. No. 95426, 2011-Ohio-2394, ¶ 21 (where we found sufficient evidence to sustain defendant's menacing by stalking conviction under R.C.

2903.211(A)(1) when the record revealed that after defendant's girlfriend ended their relationship, defendant would call his girlfriend's mother's home incessantly, come uninvited to her home, bang on the windows and doors, and shout for the girlfriend. The girlfriend's mother told the defendant he was not welcome at her home. The girlfriend's mother testified specifically that she feared for her safety. The detective assigned to the case testified that after one of the incidents, the girlfriend's mother was "troubled" and had "a lot of anxiety.")

{¶16} Here, when viewing this testimony in a light most favorable to the State, we cannot find sufficient evidence to support Beckwith's menacing by stalking conviction. The evidence demonstrates that Benson was uncomfortable around Beckwith and Beckwith "creeped her out." When she started working at the library Benson testified she was advised that "people come [to the library] because some of them [are] crazy [and] some of them are creepy * * *. It's just how they are. It's not like they going to do anything to you."

{¶17} Benson further testified that Beckwith never threatened her, touched her, blocked her path, or called her phone. He only spoke to her on two occasions while she was working in her capacity as a library page — Beckwith asked her for a book and asked for help downloading a song. Moreover, her coworker testified that she never observed Beckwith follow Benson and her supervisor testified that she observed Beckwith around Benson on two occasions. On both occasions, he was in the same area as Benson, but he did not interact with her. When the library security guard told Beckwith that he was not

permitted back at the library because of the encounters with Benson, Beckwith complied and left without incident. While Beckwith's presence made Benson uncomfortable, we cannot conclude from the evidence in the record that he knowingly caused Benson mental distress or physical harm as required by R.C. 2903.211(A)(1).

{¶18} Furthermore, we cannot conclude that in committing the offense of menacing by stalking, Beckwith trespassed on the premises where Benson "is employed" as charged in the furthermore specification. The record reveals that Beckwith visited the public library from May 2011 to October 2011. Beckwith had every right to visit the library during that time because it is a public place. At issue is whether Beckwith trespassed at the public library, Benson's place of employment, while committing the offense of menacing by stalking after October 18, 2011, when Flak told him he was no longer welcome. There is no evidence, however, that Beckwith trespassed at the library after his conversation with Flak. Benson's own testimony states that "Beckwith never came into the library after that." Moreover, we cannot consider his subsequent encounters with Benson near the Hyatt Hotel at The Arcade because it is directly across the street from the library. Thus, it was not the premises where Benson " is employed" as required by the furthermore specification.

{¶19} Therefore, the first and second assignments of error are sustained.

{¶20} In the third assignment of error, Beckwith argues that his conviction is against the manifest weight of the evidence. In the fourth assignment of error, he contends that the trial court erred by admitting prejudicial other acts evidence. In the

fifth assignment of error, he claims the trial court imposed court costs in the sentencing journal entry, but did not impose any court costs at the sentencing hearing. However, based on our disposition of the first and second assignments of error, the remaining assignments of error are overruled as moot. *See* App.R.12(A)(1)(c).

**{¶21}** Judgment is reversed, and the matter is remanded to the trial court with instructions to vacate his conviction for menacing by stalking. The appellant's conviction having been reversed and vacated, appellate is ordered discharged. The trial court is ordered to take all necessary steps to effect the immediate release of the appellant from prison.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS IN JUDGMENT ONLY;
PATRICIA A. BLACKMON, J., CONCURS