[Cite as *Brook Park v. Bella*, 2025-Ohio-43.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF BROOK PARK, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 113760 |
| v. | : | |
| JARED C. BELLA, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 9, 2025

Criminal Appeal from the Berea Municipal Court
Case No. 23CRB00347

*Appearances:*

Joseph Grandinetti, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Rick Ferrara, Assistant Public Defender, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Jared C. Bella ("Bella"), appeals his conviction for menacing by stalking, raising sufficiency, manifest weight, and deficiencies in the complaint arguments. For the reasons that follow, we affirm his conviction.

## I. Facts and Procedural History

{¶ 2} In March 2023, Bella was charged with menacing by stalking in violation of R.C. 2903.211(A)(1), a first-degree misdemeanor. The complainant was the boyfriend ("Boyfriend") of Bella's ex-girlfriend. A bench trial ensued, and the following evidence was presented.

{¶ 3} Bella's ex-girlfriend, the mother of his sixteen-year-old son ("Mother"), testified that in the early morning hours of March 8, 2023, while she was sleeping on the couch at her boyfriend's house, she awoke to headlights in the front window and a beeping noise. She testified that she looked out the window and observed Bella's vehicle backing out of the driveway. Mother roused Boyfriend and had him review his surveillance-camera footage to confirm that it was Bella. She then called the non-emergency police line to report the incident. She testified that she was terrified, and that Bella "knew exactly what he was doing." (Tr. 12.) Mother further testified that Bella was trying to "scare me or to confront us, you know, damage our vehicles." (Tr. 12.) She also testified that a few days later, Bella drove past her house twice. Mother claimed that Bella was angry with her due to an argument they had in January over their child. Mother testified that she would not leave her house and could not sleep for months. She testified that she obtained a civil protection order against Bella.

{¶ 4} Boyfriend testified that on March 8th, Mother woke him in a panic after observing Bella pulling out of the driveway. Boyfriend reviewed the video footage and observed Bella's vehicle pull in the driveway, a person exited the vehicle

and took a picture of something, and then the person entered the vehicle and left. Boyfriend said he was "frightened." (Tr. 26.) He testified that he felt uncomfortable, stating that "I didn't feel comfortable with anybody, you know, pulling into my driveway all the way up to my house, especially Jared Bella." (Tr. 31.) Boyfriend testified that a few days later, he observed Bella outside his home video recording his teenaged daughter. He testified that his daughter was "terrified" and "felt uncomfortable being at my house after that." (Tr. 35.) Boyfriend was aware of the ongoing parenting issues between Bella and Mother.

{¶ 5} Bella testified in his defense. Bella testified that he was worried for his son's safety and was gathering evidence to obtain joint custody. He testified that he learned that Boyfriend had abused Bella's son, and that Mother was living with Boyfriend, possibly leaving their child alone at her home. He asserted that he went to Boyfriend's house on March 8th to see if Mother was staying there. Bella testified that he was not trying to scare anyone, he simply wanted evidence that Mother was not taking care of their son.

{¶ 6} The trial court found Bella guilty of menacing by stalking and sentenced him to 12 months of probation, which was suspended pending appeal. Bella asserts the following assignments of error:

> **Assignment of Error I:** Insufficient evidence supported Bella's conviction for menacing by stalking.

> **Assignment of Error II:** The manifest weight of the evidence did not support Bella's conviction for menacing by stalking.

**Assignment of Error III:** [Bella] was denied due process where the trial court and city failed to amend the complaint as to the element of "mental distress."

## II. Law and Analysis

{¶ 7} In Bella's first assignment of error, he argues that there was insufficient evidence to sustain his conviction for menacing by stalking. Plaintiff-appellee, the city of Brook Park ("City") argues that Bella has waived this argument because he failed to bring a Crim.R. 29 motion at trial. The Ohio Supreme Court, however, has long held that a defendant's plea of not guilty serves as a Crim.R. 29 motion, thus Bella's argument is not waived. *Dayton v. Rogers*, 60 Ohio St.2d 162, 163 (1979); *State v. Carter*, 64 Ohio St.3d 218, 223 (1992); *State v. Jones*, 91 Ohio St.3d 335, 346 (2001); *see also State v. Hardman*, 2016-Ohio-498, ¶ 36 (8th Dist.). Therefore, we will address Bella's sufficiency argument.

{¶ 8} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 2009-Ohio-3598, ¶ 12 (8th Dist.). In determining whether the evidence is legally sufficient to support the jury verdict as a matter of law, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979).

{¶ 9} Bella was charged with and convicted of menacing by stalking under R.C. 2903.211(A)(1), which states, in pertinent part:

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

{¶ 10} Bella asserts that there was insufficient evidence of a pattern of conduct towards Boyfriend. R.C. 2903.211(D)(1) defines a pattern of conduct as two or more actions or incidents closely related in time. "'The incidents need not occur within any specific temporal period.'" *State v. Kronenberg*, 2024-Ohio-4673, ¶ 25-27 (8th Dist.), quoting *Rufener v. Hutson*, 2012-Ohio-5061, ¶ 16 (8th Dist.). Trial courts may take every action into consideration, even if some actions in isolation would not seem particularly threatening. *Cable v. McHenry*, 2019-Ohio-4293, ¶ 7 (2d Dist.), citing *Guthrie v. Long*, 2005-Ohio-1541, ¶ 12 (10th Dist.).

{¶ 11} Bella argues that the first incident at Boyfriend's home did not count towards the pattern because it was not directed at Boyfriend nor was Boyfriend even aware that Bella was in his driveway until after the fact. Bella cites *State v. Wasmire*, 1994 Ohio App. LEXIS 3866 (5th Dist.), for the proposition that in order for a pattern of conduct to form, both incidents must have been "knowingly" conducted against the person at issue.

{¶ 12} We find *Wasmire*, to be distinguishable. In *Wasmire*, the defendant followed behind a school bus closely, weaving and accelerating. On a subsequent day, the defendant waited for the bus and then extended his middle finger through his sunroof and mouthed the word "b****" to the school bus driver. The driver did not know the defendant and he did not know her. The defendant was convicted of

reckless driving and menacing by stalking. The Fifth District reversed the defendant's conviction for menacing by stalking because the first incident that frightened the victim was not directed at the victim. The court reasoned that the defendant did not act knowingly towards the driver, "as his actions were appropriately characterized as reckless operation of his vehicle." *Id.* at *7.

{¶ 13} In the instant case, the evidence established that Bella not only knew the boyfriend, but he also did not like him. Bella drove to Boyfriend's house on two occasions in which he photographed something, and then videorecorded the boyfriend's daughter. When viewing the evidence in a light most favorable to the prosecution a rationale trier of fact could find a pattern of conduct involving Boyfriend.

{¶ 14} Bella next argues that there is insufficient evidence that he knowingly threatened physical harm or knowingly caused mental distress to Boyfriend. We disagree.

{¶ 15} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). It does not matter whether the defendant "'intended that his actions cause fear of physical harm or mental distress[;] instead[,] what is important is [whether] he knew his actions would probably result in such fear and mental distress.'" *Kronenberg*, 2024-Ohio-4673, at ¶ 26 (8th Dist.), quoting *Vega v. Tomas*, 2017-Ohio-298, ¶ 15 (8th Dist.), citing R.C. 2901.22(B).

Furthermore, "'[e]xplicit threats are not necessary to establish menacing by stalking under R.C. 2903.211.'" *J.S. v. Conkle*, 2024-Ohio-2330, ¶ 29, quoting *Bartells v. Bertel*, 2018-Ohio-21, ¶ 56 (12th Dist.), citing *Lundin v. Niepsuj*, 2014-Ohio-1212, ¶ 19 (9th Dist.).

{¶ 16} R.C. 2903.211(D)(2) defines mental distress as "any mental illness or condition that involves some temporary substantial incapacity" or "any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not the person requested or received" such treatment or services. "'Incapacity is substantial if it has a significant impact upon the victim's daily life.'" *M.D. v. M.D.*, 2018-Ohio-4218, ¶ 99 (8th Dist.), quoting *State v. Horsley*, 2006-Ohio-1208, ¶ 48 (10th Dist.). "'Mental distress need not be incapacitating or debilitating . . . [, and] expert testimony is not required to find mental distress.'" *Kronenberg* at ¶ 27, quoting *Perry v. Joseph*, 2008-Ohio-1107, ¶ 8 (10th Dist.). "Evidence of changed routine can support a finding of mental distress." *Id.*, quoting *Morton v. Pyles*, 2012-Ohio-5343, ¶ 15 (7th Dist.). In addition, evidence that the complainant involved the police can support a finding of mental distress. *State v. Calliens*, 2020-Ohio-4064, ¶ 48 (8th Dist.).

{¶ 17} Here, while there were no explicit threats, the evidence at trial established that Boyfriend was frightened and uncomfortable, and that he felt Bella's actions were serious enough to report both incidents to the police. In addition, Boyfriend testified that his daughter was "terrified" and that "[s]he felt uncomfortable being at my house after that." (Tr. 35.) Although R.C. 2903.211 was

"'not enacted for the purpose of alleviating uncomfortable situations,'" we find there was sufficient evidence in this case that Boyfriend and his daughter suffered mental distress and were not merely uncomfortable. *State v. Beckwith*, 2013-Ohio-492, ¶ 15, quoting *State v. Cannon*, 2011-Ohio-2394, ¶ 21 (8th Dist.). "'Notably, the statute is written in the disjunctive, therefore the [City] is only required to prove that the [defendant] *either* caused a protected person to believe that he or she will cause them physical harm *or* caused a protected person to believe that he or she will cause them mental distress.'" (Emphasis in original.) *Conkle* at ¶ 27, quoting *Holloway v. Parker*, 2013-Ohio-1940, ¶ 23 (3d Dist.). The City proved that Bella knowingly caused Boyfriend and his daughter mental distress.

{¶ 18} Accordingly, the first assignment of error is overruled.

{¶ 19} In Bella's second assignment of error, he argues that his conviction was against the manifest weight of the evidence, claiming there was no pattern of conduct or threats to Boyfriend or his daughter. We disagree.

{¶ 20} Although the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion. *Bowden*, 2009-Ohio-3598 (8th Dist.) supra, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence, and consider the credibility of witnesses." *Id.* at 13, citing *State v. Thomas*, 70 Ohio St.2d 79, 80 (1982). "The court may reverse the judgment of conviction if it appears that the factfinder "'clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered."'" *Id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A judgment should be reversed as against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 21} After examining the entire record, we cannot say that the trial court clearly lost its way. The evidence at trial established two incidents closely related in time involving Bella and Boyfriend, which caused Boyfriend and his daughter mental distress. Therefore, Bella's conviction is not against the manifest weight of the evidence.

{¶ 22} Accordingly, the second assignment of error is overruled.

{¶ 23} In Bella's third assignment of error, he argues that the complaint was deficient, claiming that he was only charged with threatening physical harm not causing mental distress; therefore, the trial court erred in finding that he caused Boyfriend mental distress. Again, we find Bella's argument unpersuasive.

{¶ 24} "'The purpose of a criminal complaint is to inform the accused of the identity and essential facts constituting the offense charged.'" *State v. Walston*, 2019-Ohio-1699, ¶ 14 (12th Dist.), quoting *State v. Stefanopoulos*, 2012-Ohio-4220, ¶ 21 (12th Dist.). According to Crim.R. 3, "the complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before

any person authorized by law to administer oaths." Here, the complaint read as follows:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person, to wit; [Bella] did drive by the Holland Road address belonging to [the boyfriend] several times over the course of a few days. [Bella] had another male go to the residence of [Boyfriend] and knock on his door. [Bella] also tried to have police do a welfare check at the [Boyfriend's] residence to see if his ex-girlfriend and his son were at the residence. On March 12, 2023, [Bella] had another male drive him to the [Boyfriend's] residence and parked near the home taking pictures of it. [Bella] then followed the daughter of [Boyfriend] home from her trip to the store. [Boyfriend] is afraid that [Bella] will do something to him, his daughter, his girlfriend, and his home and he would not be able to defend his daughter, girlfriend, or himself due to his medical condition. [Boyfriend] identified [Bella] as the ex-boyfriend of his current girlfriend, in violation of Menacing by Stalking, ORC 2903.211(A)(1), a misdemeanor of the first degree.

(Complaint, Mar. 12, 2023.)

{¶ 25} Based on the above language, we find the complaint sufficient to inform Bella of the charges against him. The elements of the offense are clearly stated in the complaint, as well the applicable statute. Furthermore, it was not error for the trial court to find Bella guilty of causing mental distress because as we have previously stated, R.C. 2903.211(A)(1) is written in the disjunctive, therefore, the City is only required to prove that the Bella either caused Boyfriend or a family member to believe that he will cause them physical harm or caused Boyfriend or a family member to believe that he will cause them mental distress. The City proved that Bella

engaged in a pattern of conduct that knowingly caused mental distress to the boyfriend and his daughter.

{¶ 26} Accordingly, the third assignment of error is overruled.

{¶ 27} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS (WITH SEPARATE OPINION)

ANITA LASTER MAYS, J., DISSENTING:

{¶ 28} I respectfully dissent from the majority's affirmation of the appellant's menacing by stalking conviction. I would find that the evidence was insufficient and that the evidence does not weight in favor of a conviction.

{¶ 29} The Ohio legislators codified menacing by stalking under R.C. 2903.211 as:

> (A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. In addition to any other basis for the other person's belief that the

offender will cause physical harm to the other person or the other person's mental distress, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶ 30} This court and the Supreme Court of Ohio has held that

[I]n *State v. Erker*, 2019-Ohio-3185, ¶ 74 (8th Dist.), this court held that "two incidents are enough to establish a pattern of conduct for purposes of R.C. 2903.211(A)(1)." In *State v. Spaulding*, 2016-Ohio-8126, ¶ 72, the Ohio Supreme Court held that, in relation to proving menacing by stalking, the parties' history "would be relevant to establish both a pattern of conduct and that [the respondent] knew that the [petitioner's] conduct would cause [the petitioner] to believe that [the respondent] was going to harm [the petitioner]."

*See J.B. v. O.S.Y.*, 2022-Ohio-3226, ¶ 79 (8th Dist.).

{¶ 31} The record shows that in March 2023, Bella was charged with menacing by stalking in violation of R.C. 2903.211(A)(1), a first-degree misdemeanor. The complainant was the Boyfriend of Bella's ex-girlfriend. I would find that to charge Bella with stalking the Boyfriend, there should be a pattern of conduct towards the boyfriend to prove menacing by stalking. The Boyfriend would have to believe that Bella's conduct would cause harm to him.

{¶ 32} The majority states verbatim that "Bella's ex-girlfriend, the mother of his sixteen-year-old son ("Mother"), testified that in the early morning hours of March 8, 2023, while she was sleeping on the couch at her boyfriend's house, she awoke to headlights in the front window and a beeping noise. She testified that she looked out the window and observed Bella's vehicle backing out of the driveway. Mother roused Boyfriend and had him review his surveillance-camera footage to confirm that it was Bella. She then called the non-emergency police line to report the

incident. She testified that she was terrified, and that Bella 'knew exactly what he was doing.' (Tr. 12.)"

{¶ 33} "Mother further testified that Bella was trying to 'scare me or to confront us, you know, damage our vehicles.' (Tr. 12.) She also testified that a few days later, Bella drove past her house twice. Mother claimed that Bella was angry with her due to an argument they had in January over their child. Mother testified that she would not leave her house and could not sleep for months. She testified that she obtained a civil protection order against Bella."

{¶ 34} The majority continues to rely on the following information in the record that the Boyfriend testified that on March 8th, Mother woke him in a panic after observing Bella pulling out of the driveway. "Boyfriend reviewed the video footage and observed Bella's vehicle pull in the driveway, a person exited the vehicle and took a picture of something, and then the person entered the vehicle and left. Boyfriend said he was 'frightened.' (Tr. 26.) He testified that he felt uncomfortable, stating that 'I didn't feel comfortable with anybody, you know, pulling into my driveway all the way up to my house, especially Jared Bella.' (Tr. 31.) Boyfriend testified that a few days later he observed Bella outside his home video recording his teenaged daughter. He testified that his daughter was 'terrified' and 'felt uncomfortable being at my house after that.' (Tr. 35.) Boyfriend was aware of the ongoing parenting issues between Bella and mother."

{¶ 35} I find that nowhere in this record are the facts established that Bella was stalking the Boyfriend. In the first incident, the mother obtained a civil

protection order against Bella, not the Boyfriend. The Boyfriend only witnessed Bella's behavior through the surveillance-camera footage, and he felt uncomfortable.

{¶ 36} In the second incident, the Boyfriend observed Bella video recording his daughter, and she was terrified. Please note that I do not condone Bella video recording the complainant's minor daughter. And personally, I believe that his actions were inappropriate and creepy. However, reviewing the elements of R.C. 2903.211(A)(1), I would determine that it does not rise to the level of a conviction of menacing by stalking against Bella.

{¶ 37} I would find that the elements of menacing by stalking are not met and that the manifest weight of the evidence has not been established.