[Cite as *Rufener v. Hutson*, 2012-Ohio-5061.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97635

---

## SAMUEL L. RUFENER

PLAINTIFF-APPELLEE

vs.

## APOLLONIA HUTSON

DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CP CV-766107

**BEFORE:** E. Gallagher, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 1, 2012

**ATTORNEY FOR APPELLANT**

John S. Salem
Denman & Lerner Co., L.P.A.
8039 Broadmoor Road
Suite 21
Mentor, Ohio   44060


**ATTORNEY FOR APPELLEE**

Ravi Suri
850 Euclid Avenue
Suite 804
Cleveland, Ohio    44114

EILEEN A. GALLAGHER, J.:

**{¶1}** Apollonia Hutson appeals from the decision of the trial court, granting Samuel J. Rufener's application for a civil stalking protection order. Hutson argues that the court erred in granting the order and erred when it conducted a portion of the proceedings without applying the rules of evidence. For the following reasons, we reverse the decision of the trial court and remand for proceedings consistent with this opinion.

**{¶2}** This appeal arises from the trial court's grant of a civil stalking protection order in which it found, by a preponderance of the evidence, that Hutson engaged in a pattern of conduct that caused Rufener to believe that Hutson would cause him mental distress. Rufener initially filed this petition on October 7, 2011, and received a temporary ex parte protection order on that date. The trial court conducted a full hearing on November 3, 2011, and granted the final civil stalking protection order on that date. The order is for a period of five years and, therefore, does not expire until November 3, 2016.

**{¶3}** At the full hearing, Rufener described his relationship with Hutson and discussed several incidents in which he claimed Hutson stalked and harassed him after

their relationship ended.   Rufener testified that he and Hutson were in a relationship from May 2010 until September 2010.   Rufener stated that he and Hutson never lived together, but when the relationship ended, he allowed Hutson to stay in his condominium while he lived with a relative.

{¶4}   After the relationship ended, Hutson gave birth to a child, whom Hutson claims was fathered by Rufener, a claim which Rufener denies.   Paternity has not yet been established.   The parties were in verbal contact until March 2011.   The most detailed account of appellee's complaints came from a police report that had been prepared by Detective Alex Bakos of the Olmsted Falls Police Department and submitted by Rufener at the hearing.   Although Detective Bakos never testified during the hearing, the trial court allowed Rufener to testify to the details of the report.   According to the report, Rufener allowed Hutson to stay in his condominium with Rufener paying all of the bills for the property because he believed Hutson was unemployed.   The report further stated that he received threatening emails and text messages, claiming to be from a friend of Hutson's purportedly deceased ex-husband.   Rufener reported the threats to the police who determined that Hutson was the source of the emails and text messages.

{¶5}   In addition to the police report, Rufener testified about emails that he allegedly received from Hutson.   Rufener claimed that at least one of those emails

alleged that he was a member of a sex website and that the emails were sent to three different email accounts that were registered to him, including his work email. Rufener did admit to having had an account with "Hot or Not," an internet site. Rufener also testified that after the Olmsted Falls police executed a search warrant and seized Hutson's computers on March 30, 2011, the texts and emails ceased.

{¶6} Rufener testified that on September 1, 2011, Hutson's mother filed a police report indicating that a threatening and vulgar note was found in her residence that she attributed to someone working on Rufener's behalf. Additionally, Rufener also testified that on October 14, 2011, Hutson filed a claim with the Olmsted Township police, alleging that a man with a Russian accent entered her home and threatened her regarding money she owed to Rufener. Rufener testified that police questioned him about the October 14 report. Rufener expressed to the court that it was his belief that Hutson fabricated both reports.

{¶7} Rufener further testified that Hutson drove past his residence on two occasions. Upon cross-examination, he admitted that on only one of those occasions was he absolutely certain that it was Hutson driving. Rufener then testified to two incidents in which Hutson appeared at Rufener's work and volunteer activities. He stated that in September, he came across a newsletter from April 2011 that reflected that Hutson had signed up to volunteer at the same shelter at which he had been volunteering.

The second incident was on October 1, 2011, when Hutson was present at a cross-country track meet where Rufener was working as a coach. Rufener admitted that he had no contact with Hutson on that date, and that Hutson has a daughter who attended the school where the track meet was being held. In the interest of saving time, the court had Rufener testify to these events by having him confirm all of the allegations contained in his petition for the civil stalking protection order.

{¶8} In support of his petition, Rufener submitted the investigation report from Detective Bakos, the September 1 report filed by Hutson's mother and the October 14 police report filed by Hutson, none of which was authenticated. Rufener did not offer as evidence any emails or text messages purportedly sent to him from Hutson.

{¶9} Hutson did not testify during the hearing and, at the close of the evidence, the court granted the civil stalking protection order.

{¶10} Hutson appeals, raising the following two assignments of error:

Assignment of Error I

It was an error to grant the civil protection stalking order.

Assignment of Error II

It was an error to conduct a portion of the hearing without applying the rules of evidence.

{¶11} In her first assignment of error, Hutson argues that the trial court erred

in granting Rufener's petition for a civil stalking protection order.    We agree.

{¶12}    "The decision whether or not to grant a civil protection order is well within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion."    *Bucksbaum v. Mitchell*, 5th Dist. No. 2003-CA-0070, 2004-Ohio-2233, ¶ 14.    An abuse of discretion requires more than a mere error of law or judgment.    Instead, an abuse of discretion implies that the decision of a court was unreasonable, arbitrary or unconscionable.    *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).    Moreover, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."    *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶13}    The petitioner need not prove that the respondent intended to cause actual harm to the petitioner.    *Jenkins v. Jenkins*, 10th Dist. No. 06AP-652, 2007-Ohio-422. Instead, the evidence must show that the respondent knowingly engaged in a pattern of conduct that causes the petitioner to believe that the respondent will cause physical harm or mental distress to him/her.    *Jenkins*; *Guthrie v. Long*, 10th Dist. No. 04AP-913, 2005-Ohio-1541.

{¶14} The culpable mental state of menacing by stalking, R.C. 2903.211, is "knowingly."    "Knowingly" is defined in R.C. 2901.22(B) as follows:

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. Purpose or intent to cause physical harm or mental distress is not required. It is enough that the person acted knowingly.

{¶15} Therefore, in order to show that a defendant violated R.C. 2903.211 and is subject to a civil protection order under R.C. 2903.214, it must be shown that the respondent engaged in conduct that she knew would probably cause the complainant to believe that she would cause him physical harm or cause him to suffer mental distress. *Jenkins*; *State v. Barnhardt*, 9th Dist. No. 05CA-008706, 2006-Ohio-4531, ¶ 10. A preponderance of the evidence is all that is required to support a civil protection order. *Jenkins.*

{¶16} By definition, a pattern of conduct is two or more actions or incidents closely related in time. R.C. 2903.211(D)(1). The incidents need not occur within any specific temporal period. *Jenkins.* For purposes of the statute, mental distress includes that would normally involve treatment by a mental health professional, whether or not the person actually sought treatment or was treated. R.C. 2903.211(D)(2).

{¶17} Mental distress need not be incapacitating or debilitating. *Jenkins.* Additionally, expert testimony is not required to find mental distress. *Jenkins.* Lay testimony may be sufficient. *State v. McCoy*, 9th Dist. No. 06CA-8908,

2006-Ohio-6333; *State v. Tichon*, 102 Ohio App.3d 758, 658 N.E.2d 16 (9th Dist.1995).

A trial court "may rely on its knowledge and experience in determining whether mental distress has been caused." *State v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18; *Middletown v. Jones*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 7 (12th Dist.).

{¶18} Initially, we find error with the manner in which the trial court conducted the November 3, 2011 hearing. In order to grant a petition for a civil stalking protection order, a trial court must hold a full hearing; the petition itself is not evidence to be considered at that full hearing. *See* R.C. 2903.214(D)(3); *Felton v. Felton*, 79 Ohio St.3d 34, 1997-Ohio-302, 679 N.E.2d 672. The trial court, in an effort to save time, instructed Rufener to reiterate the allegations in his petition for the civil stalking protection order. This resulted in an incorporation of the initial petition, which the court considered during the ex-parte hearing, not the presentation of evidence as is required at a full hearing. Even if we ignore the trial court's procedural error, we find Rufener's petition for a civil stalking protection order to be lacking.

{¶19} In support of his petition, Rufener testified that from November 2010 through March 2011, he received numerous threatening emails and text messages from Hutson. Rufener stated that the threats he received via email and text from Hutson alleged that she would tell his employer that he belonged to sex web sites and that he

engaged in sex with minors. Rufener did not submit these documents as evidence. Additionally, Rufener admitted that his last written or verbal contact with Hutson was in March 2011, more than six months prior to his application for the civil stalking protection order.

{¶20} Between March 2011 and his petition in October 2011, Rufener stated that Hutson attempted to make physical contact with him. Specifically, Rufener stated that he observed Hutson drive by his house in August 2011 and that in September 2011 he learned that Hutson had volunteered in April 2011 at a shelter where, he claims, she knew he volunteered. Lastly, Rufener stated that Hutson appeared at a cross-country meet in October 2011, although he admitted that Hutson was with her daughter, who attended the school where the cross-country meet was held.

{¶21} Taking these incidents together, we conclude that there is an absence of competent, credible evidence to support the court's conclusion that Hutson knowingly engaged in a pattern of conduct that caused Rufener to believe that Hutson would cause him mental distress. Primarily, it appears that the crux of Rufener's complaint against Hutson were the allegedly threatening emails and messages that were not submitted as evidence. We note that by Rufener's own admission, those alleged threats stopped in March 2011, six months before he moved for the protection order. We find this alleged activity of Hutson's to be remote from Rufener's petition and find the fact that the emails

and text messages had stopped, to weigh against the grant of the civil stalking protection order.

{¶22} Additionally, during the six month period before he petitioned the court for a civil stalking protection order, Rufener testified that Hutson drove past his house on one occasion, volunteered at the same shelter where he volunteered, and appeared at a cross-county meet where he was coaching. However, Rufener admitted that Hutson never made any contact with him when she drove past his house and that he did not know that Hutson began volunteering at the same homeless shelter until he did a Google search using her name. Lastly, although Hutson appeared at Rufener's cross-country meet, she was with her daughter, who attended the school where the meet was being held. Rufener presented no evidence that Hutson knew that Rufener was volunteering or that she saw him at the track meet.

{¶23} Taking this evidence together, we conclude that there lacks competent, credible evidence that Hutson acted knowingly to cause Rufener to believe that she would cause him mental distress. As such, we find the judgment of the trial court to be against the manifest weight of the evidence.

{¶24} Hutson's first assignment of error is sustained.

{¶25} Our analysis of Huston's first assignment of error renders her remaining assignment of error moot.

**{¶26}** The judgment of the trial court is reversed; the cause is remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR