[Cite as *McWilliam v. Dickey*, 2013-Ohio-4036.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99277

## MACKENZIE McWILLIAM

PETITIONER-APPELLEE

vs.

## JOSHUA DICKEY

RESPONDENT-APPELLANT

### JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-789842

**BEFORE:** Jones, J., Stewart, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** September 19, 2013

**ATTORNEY FOR APPELLANT**

Daniel J. Gbbons
Deery & Gibbons
300 Fourth Street
Elyria, Ohio 44035


**FOR APPELLEE**

Mackenzie McWilliam, Pro se
26537 Oviatt Road
Bay Village, Ohio 44140

LARRY A. JONES, SR., J.:

{¶1} Respondent-appellant, Joshua Dickey, appeals the trial court's decision to grant a Civil Stalking Protection Order ("CSPO") to petitioner-appellee MacKenzie McWilliam and minor child, J.M. We affirm.

{¶2} On August 22, 2012, McWilliam filed a petition for a protection order pursuant to R.C. 2903.214, seeking to cover both herself and the parties' newborn daughter, "J.M." The trial court set the matter for a hearing on September 11, 2012, but continued the hearing until September 21. On September 11, the trial court issued an ex parte CSPO, and continued the September 21 hearing until November 9, 2012. On November 9, Dickey's attorney orally moved for a continuance because his client was at a drug treatment center in Florida. The trial court denied the motion and went forward with the hearing.

{¶3} On November 19, 2012, the trial court issued a CSPO covering McWilliam and the child for a time period of five years.

{¶4} The following pertinent evidence was presented at the hearing.

{¶5} Twenty-year-old McWilliam testified that she was in nursing school, had never used drugs, and gave birth to J.M. on July 18, 2012. McWilliam dated 21-year-old Dickey off and on in 2011 and 2012.

{¶6} McWilliam testified she met Dickey in February 2011 and moved into his parents' home in November 2011, after she found out she was pregnant. She moved out

on March 17, 2012.

{¶7} McWilliam testified that Dickey abused drugs and, when he used drugs, he went from "being very, very nice to very, very mean. * * * Violent." McWilliam stated that Dickey had a history of drugs dating back to 12 years of age and that she had personally witnessed him use: "weed, spice, oxy, heroin, crack cocaine, PCP, alcohol, bath salts and ecstasy." According to McWilliam, she once took Dickey to the emergency room for a "mild heart attack" caused by ingesting bath salts. McWilliam further testified that Dickey had been to several drug treatment programs or "rehabs," completed "rehab" twice, and "he's always left rehab during the day and [got] high that night."

{¶8} McWilliam testified to a March 31, 2012 incident that occurred when she was six months pregnant:

> At the time, I was pregnant, he pushed me. He was high and he had thrown like medicine down the stairs * * * and he had broke picture frames.
>
> * * *
>
> So I come home from work. I worked second shift, so it was late at night and I'm pregnant and clearly tired. He had started — he was high. He started screaming at me. He pushed me. * * * [H]e pushed me onto the bathtub. And then he had thrown, like, he said he was going to kill himself and took a pill bottle and threw it down the stairs. And that's when he shattered a bunch of pictures and stuff. And he threw my keys up in a tree, I remember, so I couldn't leave.

{¶9} McWilliam testified she went to the police station the next morning and filed a police report, which the trial court entered into evidence.

{¶10} When J.M. was born, McWilliam spent four days in the hospital. During those four days, McWilliam testified that Dickey was under the influence of heroin every

time he visited her and the baby. She testified he was high the "whole time" and she knew he was high because "[w]hen he's high, he itches his nose and he kind of like talks really fast. I mean, I've known him for a couple years, so I kind of know how he acts when he's high on heroin." McWilliam testified he was "so high" one of those days that he could not stand up and had told her that "he didn't mean to get this high."

{¶11} McWilliam testified that when Dickey was on drugs

> he pretty much is crazy * * * he is not stable to be around either of us and it scares me. * * * He has needles around the house. [The baby] is getting to the point where she's starting to roll over and crawl and like, that's a safety issue for her not to have needles under the couches and stuff. * * * If he's high on drugs, who knows if he'll nod in and out. * * * You know, if he's holding her, he could drop her.

{¶12} The trial court also entered into evidence computer printouts of a municipal court docket showing Dickey as the defendant in a 2010 domestic violence case and an August 2010 drug possession case. McWilliam testified that the victim in the domestic violence case was Dickey's mother.

{¶13} As to the drug possession case, McWilliam testified that Dickey had told her that his parents had accused him of taking his mother's cell phone and selling it for drugs. Dickey's father called police and asked the police to search his son's room. According to McWilliam, police found a scale, spoon, pop can, and hypodermic needles used for taking drugs.

{¶14} Finally, McWilliam testified that Dickey has caused her mental distress and she believed he would continue to cause her and the baby physical harm or mental distress.

{¶15} The defense entered into evidence text messages sent between McWilliam

and Dickey between August 18 and September 2, 2012.   In the text messages, the couple argued, rekindled their relationship for a day, and at one point called each other "fiancee."

{¶16} Dickey's mother, Sheryl Dickey, testified that she allowed her son to use her cell phone and explained how she took "screen shots" of text messages between her son and McWilliam, downloaded the screen shots to her computer, and printed them out for the hearing.   Sheryl also testified that she was aware of her son's drug problem, remembered her son being "high" in the hospital when the baby was born, and admitted money she had given him may have been used to buy drugs.   She further remembered that McWilliam had asked her to remove Dickey from her hospital room after the baby was born because Dickey was too high on drugs.

{¶17} In its oral pronouncement granting the CSPO, the court stated that Dickey's drug problem had clearly caused McWilliam mental distress and

> it's been a consistent pattern with him and also that she testified that he pushed her down and physically assaulted her. * * * [R]ight now [the] petitioner has proved that this is necessary.   So I'm going to grant the order of protection.   And it's with the caveat that it could be modified with respect to further orders of the juvenile court with respect to custody, visitation, etc.

{¶18} Dickey filed a timely appeal.   The trial court record was transmitted to this court but the original CSPO petition was missing from the file.   The case was remanded to the trial court and the parties were instructed to assist the trial court in completing the record.   The file was returned to this court, however, without the CSPO petition. Therefore, we proceed without the benefit of a complete record.

{¶19} Dickey filed an appellate brief, raising three assignments of error for our

review. Although McWilliam did not file an appellee brief, she did file a notarized "response," in which she stated that she no longer wanted the CSPO.

**{¶20}** In his brief, Dickey raises the following assignments of error:

[I]. The trial court erred to the prejudice of appellant by granting a protection order.

[II.] The trial court erred to the prejudice of appellant by denying appellant's motion for continuance.

Civil Stalking Protection Order

**{¶21}** In his first assignment of error, Dickey contends that the trial court erred in granting McWilliam's petition for a civil stalking protection order.

**{¶22}** "'The decision whether or not to grant a civil protection order is well within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.'" *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, ¶ 12, quoting *Bucksbaum v. Mitchell*, 5th Dist. Richland No. 2003-CA-0070, 2004-Ohio-2233, ¶ 14. An abuse of discretion requires more than a mere error of law or judgment; an abuse of discretion implies that the decision of a court was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Where evidence is subject to more than one interpretation, a reviewing court must construe the evidence consistently with the judgment of the lower court. *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994).

**{¶23}** R.C. 2903.14 governs the filing of a petition for a civil protection order to

protect victims of menacing by stalking or sexually oriented offense. The statute provides that a petitioner seeking a civil stalking protection order must demonstrate that the respondent engaged in the offense of menacing by stalking, in violation of R.C. 2903.211. R.C. 2903.214(C)(1).

{¶24} Menacing by stalking is defined as "engaging in a pattern of conduct" that causes another to believe that the offender will cause serious physical harm to the other person or cause mental distress to the other person. R.C. 2903.211(A). A court may grant a stalking civil protection order if the petitioner can demonstrate, by a preponderance of the evidence, the foregoing elements under R.C. 2903.211(A). *Strausser v. White*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597, ¶ 30.

{¶25} The culpable mental state of menacing by stalking is "knowingly."

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

R.C. 2901.22(B). "Purpose or intent to cause physical harm or mental distress is not required. It is enough that the person acted knowingly." *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422, ¶ 16.

{¶26} Thus, in cases such as these, a petitioner need not prove that the respondent intended to cause actual harm to him or her; instead, the evidence must show that the respondent knowingly engaged in a pattern of conduct that causes the petitioner to believe that the respondent will cause physical harm or mental distress to him or her. *Guthrie v. Long*, 10th Dist. Franklin No. 04AP-913, 2005-Ohio-1541, ¶ 14. For purposes of the

statute, mental distress includes that which would normally involve treatment by a mental health professional, whether or not the person actually sought treatment or was treated. *Id.,* citing R.C. 2903.211(D)(2).

{¶27} Thus, in the context of this case, to receive a civil protection order, McWilliam did not need to show that Dickey intended to cause actual harm to her or J.M.; instead, the evidence had to show he knowingly engaged in a pattern of conduct that caused McWilliam to believe that he would cause physical harm or mental distress. We agree with the trial court that McWilliam met her burden.

{¶28} McWilliam testified that she met Dickey in February 2011. She moved in with Dickey and his parents after she found out she was pregnant in November 2011. She moved out on March 17, 2012, and the physical assault occurred on March 31, 2012, when she was six months pregnant. McWilliam filed a police report the next day.

{¶29} J.M. was born on July 28, 2012, and Dickey showed up to the hospital high on heroin. He was high the "whole" time they were in the hospital. His mother corroborated this testimony by admitting McWilliam had asked her to take Dickey home because of his behavior.

{¶30} During their relationship, McWilliam observed Dickey ingest a plethora of illegal drugs, she found hypodermic needles at his house, and she worried for her safety and the safety of their baby due to Dickey's constant drug use. McWilliam testified that Dickey's behavior would change from nice to mean while using drugs and that he would be "violent." Although McWilliam only testified of one specific physical act of violence,

"[a] court must take everything into consideration when determining if a respondent's conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening."

*Guthrie* at ¶ 12, quoting *Miller v. Francisco*, 11th Dist. Lake No. 2002-L-097, 2003-Ohio-1978.

{¶31} We are cognizant that, by definition, a pattern of conduct is two or more actions or incidents closely related in time. R.C. 2903.211(D)(1). But the incidents need not occur within any specific temporal period. *Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422, at ¶ 18. Some courts have held that it is possible that a pattern of conduct can arise out of two or more events that occur on the same day. *Fouch v. Pennington*, 12th Dist. Clermont No. CA2011-10-075, 2012-Ohio-3536, ¶ 11, citing *Shockey v. Shockey*, 5th Dist. Delaware No. 08CAE070043, 2008-Ohio-6797, ¶ 19. Therefore, the trial court in this case could have considered the act of pushing McWilliam and the later act of taking her keys and throwing them in a tree so she could not leave the house a pattern of conduct that arose out of two or more events that occurred on the same day.

{¶32} In addition to the physical violence, our review of the trial court record shows evidence of the mental distress McWilliam suffered. The mental distress was especially evident in the text message exchange that Dickey submitted into evidence. While many of the text messages indicated that McWilliam wanted to reunite with Dickey, they also showed the fatigue of a new mother and included conversations about how upset McWilliam was that Dickey chose drugs over caring for or spending time with their child.

{¶33} McWilliam's relationship with Dickey was plagued by his constant and insidious use of drugs, and the pattern of conduct included both the physical assault and his drug use, that occurred in her presence, and his being under the influence of drugs, which occurred both in her and in the baby's presence.

{¶34} Thus, we agree with the trial court that McWilliam showed by a preponderance of the evidence that the March 2012 physical assault coupled with the mental distress caused by Dickey's constant drug use caused her to believe that he would cause serious physical harm or mental distress to her and their child.

{¶35} Based on the specific facts of this case, the trial court did not abuse its discretion in granting the CSPO.

{¶36} The first assignment of error is overruled.

### Motion for Continuance

{¶37} In the second assignment of error, Dickey argues that the trial court erred when it refused to grant his motion for a continuance.

> The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. [Therefore, an] appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.

*State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *State v. Bayless*, 48 Ohio St.2d 73, 101, 357 N.E.2d 1035 (1976).

{¶38} R.C. 2903.214 provides for four situations under which a trial court may grant a continuance of a full hearing after the court grants an ex parte protection order.

The statute states that a court may grant a continuance of the full hearing to a reasonable time determined by the court: (1) if the respondent has not been served with the petition and notice of the full hearing, (2) the parties consent to the continuance, (3) the continuance is needed to allow a party to obtain counsel, or (4) the continuance is needed for other good cause.   R.C. 2903.214(D)(2)(a)(i)-(iv).   Dickey had been served with the petition and notice, had retained counsel, and McWilliam objected to the motion for continuance; therefore, the only reason pursuant to the statute that could apply was if the court found that the continuance was needed for "other good cause."

{¶39} The trial court originally set the motion for a full hearing on September 11, 2012.   On September 5, Dickey filed a motion to continue, stating he had just been served with a copy of the petition and retained counsel.   The court granted the ex parte CSPO and set a hearing for September 21, 2012.   The docket reflects that on September 21, the trial court continued the hearing until November 9, 2012, due to "respondent unavailable."   The court also ordered that the ex parte protection order remain in effect until November 10, 2012.

{¶40} On November 9, Dickey's attorney orally moved the court to continue the hearing, explaining that his client was in an inpatient drug rehabilitation program in Florida, would likely remain in the program for the next two to six months, and that his unavailability made it difficult for counsel to discuss witness testimony or other evidence with him.

{¶41} The trial court asked McWilliam if she objected to another continuance, and

McWilliam stated that she did. The trial court indicated that it has its own policy of allowing each party a single continuance and, because the hearing was a civil matter and Dickey's constitutional rights would not be affected, the court was going to proceed with the hearing.

{¶42} Dickey argues that the trial court abused its discretion in refusing to grant him another continuance, but we find that it was within the court's discretion to proceed with the hearing. Although we understand Dickey's desire to be at the hearing and we acknowledge he was out of state trying to combat his drug addiction, his attorney conceded that he would be in drug rehabilitation for an undetermined amount of time and at least another two to six months. The trial court is not required to continue the hearing and ex parte order indefinitely.

{¶43} Based on these facts, the trial court did not abuse its discretion in denying Dickey's motion for a continuance. The second assignment of error is overruled.

{¶44} Finally, although McWilliam did not file an appellee brief, she filed a notarized statement in which she indicated that she no longer wanted a CSPO. Although we affirmed the trial court's judgment granting the CSPO, the trial court will retain jurisdiction over the case to entertain any further motions by the parties to amend or change the CSPO.

{¶45} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MELODY J. STEWART, A.J., and
TIM McCORMACK, J., CONCUR