[Cite as *Elkins v. Manley*, 2016-Ohio-8307.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104393

---

## SHELLY L. ELKINS

PLAINTIFF-APPELLEE

vs.

## DOLORES J. MANLEY

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-861618

**BEFORE:** E.T. Gallagher, J., McCormack, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 22, 2016

**FOR APPELLANT**

Dolores J. Manley, pro se
3634 E. 47th Street
Cleveland, Ohio 44127


**FOR APPELLEE**

Shelly L. Elkins, pro se
7208 Deveny Avenue
Cleveland, Ohio 44105

EILEEN T. GALLAGHER, J.:

**{¶1}** Appellant, Dolores Manley ("Manley"), pro se, appeals from the trial court's judgment granting petitioner, Shelly L. Elkins's ("Elkins"), petition for a civil stalking protection order ("CSPO"). Manley raises the following assignments of error for review:

1. The court acted unprofessional with the defendant.

2. The court made false statements about what the defendant said.

3. The court didn't want to hear the defendant's side at all.

4. The court wouldn't let the defendant see documents, letters, calls, professional people, etc.

**{¶2}** After careful review of the record and relevant case law, we affirm the trial court's order.

## I. Procedural History

**{¶3}** On April 5, 2016, Elkins filed a petition for a CSPO against Manley pursuant to R.C. 2903.214. The petition alleged that Manley was harassing her and her daughter, H.K., by telephone and mail. Elkins further alleged that Manley followed her in public places, made false accusations, and has closed Elkins's personal bank accounts without permission.

**{¶4}** On April 11, 2016, the trial court granted a temporary CSPO from April 8, 2016, until May 31, 2016, "or until further order of this court." A full hearing on the petition was held on April 21, 2016, where the following testimony was adduced.

**{¶5}** At the hearing, Elkins testified that she is the legal guardian of H.K. Manley is the biological mother of H.K., but has had no contact with her since her birth. Elkins stated that over the course of 20 years, Manley has continuously harassed her and her family. Specifically, Elkins testified that Manley has repeatedly made disruptive phone calls and has made false accusations against her with the Cuyahoga County Children and Family Services "at least 180 times." In addition, Elkins stated that Manley has canceled her bank accounts without permission and has made threatening statements. Elkins testified that Manley's pattern of conduct has caused her mental distress and depression.

**{¶6}** At the conclusion of the hearing, the trial court found that Elkins carried her burden of proof and entered a protection order "in favor of [Elkins] and against [Manley] for a term of five (5) years."

**{¶7}** Manley now appeals from the trial court's order granting Elkins a CSPO.

## II. Law and Analysis

### A. Judicial Bias

**{¶8}** In her first, second, and fourth assignments of error, Manley collectively argues the trial court's judgment was the product of judicial bias. Specifically, Manley contends that the trial court (1) treated her unprofessionally throughout the proceedings, (2) accused her of making derogatory statements that she did not make, and (3) did not allow her to view letters submitted to the court by Elkins during the CSPO hearing.

> Judicial bias is defined as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as

contradistinguished from an open state of mind which will be governed by the law and facts."

*State v. Miller*, 6th Dist. Lucas No. L-08-1314, 2009-Ohio-3908, ¶ 20, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34. "A trial judge is 'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity.'" *Weiner v. Kwiat*, 2d Dist. Montgomery No. 19289, 2003-Ohio-3409, ¶ 90, quoting *Eller v. Wendy's Internatl., Inc.*, 142 Ohio App.3d 321, 340, 755 N.E.2d 906 (10th Dist.2000)." *Id.* at ¶ 21. "[T]he appearance of bias or prejudice must be compelling to overcome these presumptions." *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5.

{¶9} In this case, we find no evidence to overcome the trial court's presumption of integrity. Our review of the transcript in this case indicates that the trial judge provided Elkins and Manley with the opportunity to explain their respective sides of the alleged incidents, properly considered all arguments before granting the CSPO, and treated the parties equally and professionally. We do not perceive a hostile feeling or spirit of ill will towards Manley. In addition, there is nothing in the record to suggest the trial judge treated Elkins favorably. While Manley maintains that the trial court incorrectly believed that she called Elkins a "b****" immediately before the hearing started, there is nothing in the record to suggest the court misheard Manley or that the statement influenced the court's judgment. Moreover, given the circumstances of the allegations raised against Manley, we find the trial court did not act arbitrarily in exercising caution

by refusing to provide Manley with copies of the letters submitted by members of Elkins's family in support of her petition. As the court stated in its journal entry:

> During the hearing, the court accepted into evidence and briefly reviewed certain documents submitted by petitioner. Said documents consisted principally of letters of support. Respondent demanded copies of the documents, but the court rebuffed that request for two reasons: first, respondent's behavior at the hearing strongly suggested she might retaliate against the individuals who authored letters. Second, the court unequivocally states that it would have reached precisely the same decision on the protection order in the absence of the letters of support.

{¶10} Accordingly, we find no merit to Manley's claim of judicial bias. Manley's first, second, and fourth assignments of error are overruled.

## B. Weight of the Evidence

{¶11} In her third assignment of error, Manley argues the trial court failed to consider her side of the story. We interpret Manley's third assignment of error as a challenge to the weight of the evidence supporting the CSPO.

{¶12} The decision to grant a CSPO is well within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, ¶ 12. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶13} For a trial court to grant a CSPO, it must hold a full hearing and proceed as in a normal civil action. R.C. 2903.214(D)(3). The petitioner must show, by a preponderance of the evidence, that the respondent's conduct violates the menacing by stalking statute. *Strausser v. White*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597,

citing *Felton v. Felton*, 79 Ohio St.3d 34, 42-43, 679 N.E.2d 672 (1997). R.C. 2903.211(A)(1) defines the offense of menacing by stalking: "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." On appeal, we consider whether there is some competent, credible evidence to support each element of menacing by stalking. *Id.* at ¶ 33.

{¶14} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "'Purpose or intent to cause physical harm or mental distress is not required. It is enough that the person acted knowingly.'" *McWilliam v. Dickey*, 8th Dist. Cuyahoga No. 99277, 2013-Ohio-4036, ¶ 25, quoting *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422, ¶ 16.

{¶15} To be granted a CSPO, therefore, Elkins was required to show that Manley knowingly engaged in a pattern of conduct that caused her mental distress. *Strausser*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597, at ¶ 34. R.C. 2903.211(D)(2) defines "mental distress" as either of the following:

> (a) [a]ny mental illness or condition that involves some temporary substantial incapacity; (b) [a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

"Mental distress need not be incapacitating or debilitating." *Jenkins* at ¶ 19. Furthermore, "[i]t is the duty of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's actions." *Taylor v. Taylor*, 2d Dist. Miami No. 2012-CA-14, 2012-Ohio-6190, ¶ 16. "Expert testimony is not required to establish mental distress, and the trier of fact 'may rely on its knowledge and experience in determining whether mental distress has been caused.'" *Strausser* at ¶ 32. Further, the testimony of the victims themselves as to their fear is sufficient to establish mental distress. *Id.,* citing *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.

{¶16} A pattern of conduct is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. * * *." R.C. 2903.211(D)(1). "[T]he temporal period within which the two or more actions or incidents must occur * * * [is a] matter to be determined by the trier of fact on a case-by-case basis." *Ellet v. Falk*, 6th Dist. Lucas No. L-09-1313, 2010-Ohio-6219, ¶ 22.

{¶17} Having reviewed the testimony presented at the CSPO hearing, we find Elkins presented competent, credible evidence that Manley knowingly engaged in a pattern of conduct that caused Elkins mental distress. The trial court was presented with testimony establishing that Manley has repeatedly interfered with Elkins and her family's lives by making intrusive phone calls at their home, reporting Elkins to CCDCFS over 180 times, following Elkins in public places, making threatening statements, and closing

Elkins's bank account without permission. Further, Elkins testified that Manley's pattern of conduct has caused her mental distress, which has led to periods of depression. Under these circumstances, the trial court did not abuse its discretion in granting Elkins's petition for a CSPO.

{¶18} Manley's third assignment of error is overruled.

### III. Conclusion

{¶19} The trial court's judgment granting Elkins a CSPO was supported by competent and credible evidence. Moreover, there is nothing in the record to suggest that the trial court's judgment was the product of judicial bias.

{¶20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
SEAN C. GALLAGHER, J., CONCUR