[Cite as *M.J.W. v. T.S.*, 2019-Ohio-3573.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| M.J.W., | : | |
| Petitioner-Appellee, | : | No. 108014 |
| v. | : | |
| T.S., | : | |
| Respondent-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** September 5, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-906724

*Appearances:*

M.J.W., *pro se.*

Wargo and Wargo Co., L.P.A., and Thomas M. Wilson, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1}   Respondent-appellant, T.S., appeals from the trial court's order granting a civil stalking protection order ("CSPO") to petitioner-appellee, M.J.W., and her husband and son.  He raises one assignment of error for our review:

The trial court erred when it granted a civil stalking protection order which was not supported by a preponderance of the evidence.

{¶ 2} Finding partial merit to his assignment of error, we affirm in part and reverse in part.

## I. Procedural History and Factual Background

{¶ 3} On November 9, 2018, M.J.W. filed for a CSPO against T.S. under R.C. 2903.214. The petition requested a CSPO based on T.S.'s alleged menacing by stalking. In support of the petition, M.J.W. attached a handwritten explanation that stated:

> We have lived at [our home] for over 40 years. [T.S.'s] family has lived next door to us for that period of time. We have many complaints and concerns about the actions of [T.S.] — a resident of that home.
>
> My husband, son, and I have felt threatened, unsafe, insecure, and deeply fearful of what [T.S.] might do next.
>
> In recent times, [T.S.] came charging at us for "overcutting" the grass. He was screaming. Police were called — his actions and tone of voice were frightening.
>
> [T.S.] called me a bitch and a cunt when he thought I was looking at him. [T.S.] in an ensuing argument told my son he was going to slit his throat.
>
> [T.S.] was trying to hurt me when he went up on his roof with a leaf blower and all of the cinders and sticks came down on me, and I was standing on the patio. Some blew into my eyes, and I couldn't see until I used an eyewash.
>
> We are reluctant to use our patio and go in our backyard because [T.S.] uses comments to provoke and intimidate.
>
> We are terrified that [T.S.'s] behaviors are escalating in recent years due to his being arraigned on assault charges and his use of his middle fingers whenever he sees us.

I want my peaceful life back.

{¶ 4} M.J.W.'s petition sought relief on behalf of herself, her husband ("W.W."), and her son ("A.W.").

{¶ 5} After an ex parte hearing, the magistrate granted M.J.W. an ex parte CSPO. The trial court sent a copy of that order to T.S. on November 14, 2018. The docket reflects that service of the order was attempted on November 20, 2018, but that T.S. refused to sign.

{¶ 6} One week later, the trial court held a full hearing, during which T.S. and M.J.W. appeared pro se. W.W. and T.S.'s father were also present. In his appellate brief, T.S. states that he did not receive the summons for the hearing until the day before the full hearing and was unable to retain counsel.

{¶ 7} During the hearing, M.J.W. recounted that she and her husband live in a single-family residence next to T.S. and that the houses are no more than ten feet apart from each other. She stated that in the spring of 2017, T.S. jumped out of his truck, charged at her and her family, and screamed at them for "overcutting" the grass. M.J.W. stated that "his actions and tone of voice were frightening" and explained that the police were called.

{¶ 8} M.J.W. said that on another occasion, in the summer of 2017, T.S. was on the other side of the fence and called her a "bitch and a cunt" as she took the garbage out. She said it was "scary" and "upsetting."

{¶ 9} M.J.W. said that she and her family ultimately decided to construct a six-foot fence between the houses.

{¶ 10} M.J.W. then recounted another incident from the summer of 2017, during which T.S. told A.W. that he would slit A.W.'s throat during an argument.

{¶ 11} M.J.W. stated that in the spring of 2018, T.S. went onto his roof with a leaf blower and made eye contact with M.J.W., who was standing out on her patio. M.J.W. said that T.S. blew "all the cinders and sticks" down onto her and that the debris "rained down on [her]" and got into her eyes. She said that she had to use an eyewash to remove the debris.

{¶ 12} M.J.W. also explained that T.S. had thrown "dirty toys" over the fence into her yard when her kids were outside in the past.

{¶ 13} M.J.W. explained to the court that she and her family were reluctant to use her patio because of T.S.'s "constant" intimidation and provocation. She said that every time they used the patio in the past, T.S. would turn on and start using the log splitter that was on the other side of the fence, which made a lot of noise and prevented M.J.W. and her family from being able to hear each other. She said that T.S. would leave the log splitter on "for hours and hours[.]"

{¶ 14} When asked why her family was seeking a CSPO, M.J.W. stated:

> It was a long time coming. We had been thinking about it a lot. * * * [W]e had talked to an attorney and he recommended that we do this for some peace of mind. We haven't had that. * * * I feel like we've been terrorized.

{¶ 15} W.W. told the court that T.S. "in a nutshell" is "menacing [and] provocative." He described an incident where T.S. pulled up in his truck as W.W. was using his leaf blower and began screaming at W.W. telling him to blow it someplace else. W.W. said that he and his family "just want to live [their lives] without being harassed all the time." He said, "[t]hat's the way it's been for all this time. We just want to be left alone. We don't bother them."

{¶ 16} The court then questioned T.S. about the incidents that his neighbors described, and T.S. stated that none of those incidents ever happened. He told the court that his neighbors were only seeking a CSPO because "they've complained to the city building departments [and] police department about [him,]" but that every time those departments showed up, "they've found everything not true." T.S. described an incident in the summer of 2018, during which M.J.W. called the health department reporting that T.S. had rats in his yard that he was letting run loose. T.S. said that the health inspector came and found that it was not true.

{¶ 17} The trial court then returned to M.J.W., who stated that she did see rats in T.S.'s yard. She also said that during the "past couple months," T.S. flips them off every time they pass his driveway.

{¶ 18} The trial court found that "[T.S.] engaged in a pattern of conduct causing petitioner and others to fear physical harm or mental distress from [T.S.]" and granted M.J.W.'s petition for a CSPO, issuing it for one year. The court informed T.S. that he was prohibited from "assaulting, threatening, abusing, harassing, following, interfering, or stalking" M.J.W., W.W., and A.W. It told him

that he had to stay 500 feet away from them with the exception of when he was on his property. The trial court also advised T.S. that if he failed to abide by the CSPO's terms, he could be charged with a crime.

{¶ 19} It is from this judgment that T.S. now appeals.

## I.    Law and Analysis

{¶ 20} In his sole assignment of error, T.S. argues that the trial court erred in granting the CSPO because M.J.W. did not establish by a preponderance of the evidence that he committed menacing by stalking.

{¶ 21} To obtain a CSPO under R.C. 2903.214, a petitioner must show, by a preponderance of the evidence, that the respondent engaged in conduct constituting "menacing by stalking" as defined in R.C. 2903.211. *Delaine v. Smith*, 8th Dist. Cuyahoga No. 103860, 2016-Ohio-5250, ¶ 17, citing *Wulf v. Opp*, 12th Dist. Clermont No. CA2014-10-1074, 2015-Ohio-3285. Under that section, a person may seek civil relief for themselves or on behalf of a family or household member. R.C. 2903.214(C)(1). However, the petitioner must show, by a preponderance of the evidence, that the respondent committed a violation of R.C. 2903.211 against each family or household member to be protected. *Prater v. Mullins*, 3d Dist. Auglaize No. 2-13-04, 2013-Ohio-3981, ¶ 8. Therefore, a petitioner cannot obtain a CSPO protecting the petitioner and his or her family and household family members "simply by presenting evidence as to one of the persons to be covered." *Id.* at ¶ 9. But "the same evidence may establish the elements of R.C. 2903.211(A)(1) as to

multiple persons to be protected under a CSPO — for example, in the case of a pattern of conduct directed at multiple persons." *Id.*

{¶ 22} To grant a CSPO petition, a trial court must hold a full hearing and proceed as in a normal civil action. R.C. 2903.214(D)(3). Notably, the petition is not evidence to be considered at that full hearing. *Felton v. Felton*, 79 Ohio St.3d 34, 42-43, 679 N.E.2d 672 (1997). The trier of fact must determine whether the preponderance of the evidence presented at the hearing establishes that the respondent violated R.C. 2903.211, the menacing-by-stalking statute. R.C. 2903.214(C)(1). Further, during the hearing, the parties must comply with the Rules of Evidence. *In re S.L.*, 2016-Ohio-5000, 56 N.E.3d 1026, ¶ 23 (3d Dist.).

{¶ 23} R.C. 2903.211 states, "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." Notably, the statute does not require a person to actually suffer physical harm or mental distress; instead, a petitioner only needs to show, by a preponderance of the evidence that the respondent will cause the petitioner to believe that the respondent will cause the petitioner mental distress or physical harm. *M.D. v. M.D.*, 2018-Ohio-4218, 121 N.E.3d 819, ¶ 98-99 (8th Dist.), citing *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, and *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 48.

{¶ 24} A pattern of conduct is defined as two or more actions or incidents closely related in time. R.C. 2903.211(D)(1). Two incidents are enough to establish

a pattern of conduct for purposes of R.C. 2903.211(A)(1). *State v. O'Reilly*, 8th Dist. Cuyahoga No. 92210, 2009-Ohio-6099, ¶ 34, citing *State v. Rucker*, 12th Dist. Butler No. CA2001-04-076, 2002-Ohio-172. "The incidents need not occur within any specific temporal period." *Rufener v. Hutson*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, ¶ 16, citing *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422. In fact, "'[t]he temporal period within which the two or more actions or incidents must occur is a matter to be determined by the trier of fact on a case-by-case basis.'" *N.P. v. T.N.*, 8th Dist. Cuyahoga No. 106314, 2018-Ohio-2647, ¶ 22, quoting *Elkins v. Manley*, 8th Dist. Cuyahoga No. 104393, 2016-Ohio-8307.

{¶ 25} R.C. 2903.211(D)(2) defines "mental distress" as

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

The mental distress does not need to be "incapacitating or debilitating" and a person does not need to request or receive psychiatric, psychological, or mental-health treatment to establish mental distress. *N.P.* at ¶ 23. Expert testimony is not required to establish mental distress, and a victim's testimony may be sufficient to establish mental distress. *Rufener* at ¶ 17; *Horsley* at ¶ 48. Further, the trier of fact "may rely on its knowledge and experience in determining whether mental distress has been caused." *N.P.* at ¶ 23.

{¶ 26} We review the trial court's finding that a petitioner has shown by the preponderance of the evidence that the respondent committed menacing by stalking, and the ultimate grant of a CSPO is reviewed under an abuse of discretion standard. *N.P.* at ¶ 20. "Abuse of discretion" means an attitude that is unreasonable, arbitrary, or unconscionable. *Reising v. Reising*, 8th Dist. Cuyahoga No. 104864, 2017-Ohio-2859, ¶ 9. Therefore, the question before us is whether there was "some competent, credible evidence to support each element of menacing by stalking." *Strausser v. White*, 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597, ¶ 33, citing *Reynolds v. White*, 8th Dist. Cuyahoga No. 74506, 1999 Ohio App. LEXIS 4454 (Sept. 23, 1999).

{¶ 27} T.S. first argues that the trial court erred in granting a CSPO on behalf of A.W. We agree.

{¶ 28} While R.C. 2903.214(C) allowed M.J.W. to seek relief for herself and on behalf of a "family or household member," the term "family or household member" is a legal term of art and defined in R.C. 3113.31(A)(3). *See* R.C. 2903.214(A)(3); *Smith v. Hein*, 1st Dist. Hamilton No. C-140529, 2015-Ohio-2749, ¶ 15; *Griga v. Dibenedetto*, 2012-Ohio-6097, 988 N.E.2d 590, ¶ 21 (1st Dist.). R.C. 3113.31(A)(3) defines "family or household member" as a spouse or child "who is residing with or has resided with the [petitioner.]" As such, M.J.W. had to prove that A.W. resided or currently was residing with her. A.W. was not present at the hearing and did not offer any evidence. M.J.W. did not present any evidence that A.W. did so, and she only testified that her husband, W.W., lived with her. While

M.J.W.'s petition listed A.W. as a family or household member, "[a] pleading is not admissible into evidence at a hearing to prove a party's allegations and must not be considered as evidence by the court." *Felton*, 79 Ohio St.3d at 43, 679 N.E.2d 672. Therefore, M.J.W. failed to establish that A.W. met the definition of a "family or household member." Accordingly, the trial court erred in granting a CSPO covering A.W., and we sustain T.S.'s assignment of error to that extent.

{¶ 29} Next, T.S. contests the CSPO's coverage of M.J.W. and W.W. He argues that the evidence only showed one incident that involved W.W., which is insufficient to establish a "pattern of conduct." He also argues that the three incidents M.J.W. relied on for her petition occurred over an 18-month period and were not "closely related in time" and, therefore, did not constitute a pattern of conduct.

{¶ 30} "'A court must take everything into consideration when determining if a respondent's conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening.'" *Guthrie v. Long*, 10th Dist. Franklin No. 04AP-913, 2005-Ohio-1541, ¶ 12, quoting *Miller v. Francisco*, 11th Dist. Lake No. 2002-L-097, 2003-Ohio-1978.

{¶ 31} At the hearing, W.W. testified that T.S. approached and screamed at him while he was using his leaf blower. Besides that one incident, W.W. spoke in generalizations about T.S.'s behavior, stating that T.S. was "menacing and provocative," but he failed to elaborate on a second incident that would have caused him to believe T.S. would cause him mental distress or physical harm. While M.J.W.

testified about a number of occasions where she said "we" felt threatened, she did not identify if W.W. was part of "we." Therefore, we agree with T.S. that the trial court erred in granting a CSPO to W.W.

{¶ 32} Turning to M.J.W., she presented evidence that T.S. engaged in multiple acts that supported the trial court's finding of a pattern of conduct, including the incident during which T.S. called her vulgar names, T.S. used his leaf blower to direct debris from his roof onto M.J.W., and the incidents preventing her from using her patio. As to T.S.'s argument that those incidents were not closely related in time, "[t]he incidents need not occur within any specific temporal period," and determination of the temporal time period is left to the trial court's determination. *Rufener*, 8th Dist. Cuyahoga No. 97635, 2012-Ohio-5061, at ¶ 16, citing *Jenkins,* 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422; *N.P.,* 8th Dist. Cuyahoga No. 106314, 2018-Ohio-2647, at ¶ 22, citing *Elkins,* 8th Dist. Cuyahoga No. 104393, 2016-Ohio-8307. M.J.W. recounted more than two incidents that occurred between spring 2017 and spring 2018, which constitutes competent, credible evidence to support the menacing-by-stalking elements. Therefore, the trial court's finding that those incidents were closely related in time was not unreasonable, arbitrary, or unconscionable.

{¶ 33} We also find that there was evidence supporting the trial court's finding that T.S. knowingly caused M.J.W. to believe that T.S. would cause her mental distress. In fact, M.J.W. testified that T.S. scared her and that he was constantly provocative and intimidating. *See Williams v. Flannery*, 8th Dist.

Cuyahoga No. 101880, 2015-Ohio-2040, ¶ 10, citing *Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208 (victims' testimony "as to their fear is sufficient to establish mental distress."). Her testimony also established that T.S. directly confronted her on a number of occasions. Therefore, we find there was competent, credible evidence to support the trial court's finding that T.S. committed menacing by stalking against M.J.W.

{¶ 34} T.S. also argues that the trial court improperly considered M.J.W.'s CSPO petition as evidence at the full hearing. T.S. cites to *Rufener* in support of his argument. In that case, we found that the court committed a procedural error during the full hearing on the petitioner's request for a CSPO because the trial court "instructed [the petitioner] to reiterate the allegations in his petition for the [CSPO, which] resulted in an incorporation of the initial petition * * * [and] not the presentation of evidence as is required at a full hearing." *Id.* at ¶ 18.

{¶ 35} We find that *Rufener* is distinguishable as the trial court did not "incorporate" M.J.W.'s CSPO petition. Before the parties testified, the trial court referred to M.J.W.'s handwritten explanation attached to her petition and asked M.J.W. to review it. The court then stated that it "need[ed] to ask [M.J.W.] whether that [was her] testimony," to which M.J.W. responded that it was. The trial court then questioned M.J.W. about the events she described in her explanation.

{¶ 36} Had the trial court simply granted M.J.W.'s petition for a CSPO based solely on her petition, it would have been error. However, the trial court did not, as T.S. argues, accept M.J.W.'s petition as her testimony. Instead, as the transcript

makes it clear, the trial court used the allegations contained in the petition as a guideline to inquire about the incidents underlying M.J.W.'s petition. In response to those questions, M.J.W. and W.W. testified about the incidents as well as others not mentioned in the petition. Therefore, M.J.W., the petitioner, presented evidence (her and her husband's testimony) at the hearing and on which the trial court relied in granting the petition for a CSPO. Accordingly, we find no abuse of discretion.

{¶ 37} After a review of the record, we find that the trial court did not abuse its discretion in granting M.J.W.'s request for a CSPO covering her only and that its decision was supported by competent, credible evidence. While T.S. denied the incidents giving rise to M.J.W.'s request, the trial court found M.J.W. and W.W. more credible. "When weighing evidence, including the potential motives of the parties and the credibility of witnesses, appellate courts are to give great deference to the factfinder's decision." *Vega v. Tomas*, 8th Dist. Cuyahoga No. 104647, 2017-Ohio-298, ¶ 25. Accordingly, we overrule T.S.'s sole assignment of error to the extent that it challenges the CSPO's coverage of M.J.W., but sustain it to the extent that it challenges the CSPO's coverage of W.W. and A.W.

{¶ 38} Judgment affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR